NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0230n.06

**FILED**

No. 12-3524

**MAR - 5 2013**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**DEBORAH S. HUNT, Clerk**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| v. | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| WENDELL M. STOUTERMIRE, | ) | |
| | ) | OPINION |
| Defendant-Appellant. | ) | |

BEFORE: NORRIS, GIBBONS, and DONALD, Circuit Judges.

ALAN E. NORRIS, Circuit Judge. Defendant Wendall Stoutermire pleaded guilty to one

count of aggravated identity theft in violation of 18 U.S.C. § 1028A(a). He received a sentence of

twenty-three months of incarceration followed by one year of supervised release. The judgment also

ordered the sentence to run consecutively to a "future imposed sentence in Pennsylvania for [a]

probation violation." On appeal, defendant contends that his sentence was procedurally and

substantively unreasonable because the district court failed to consider adequately the factors set

forth in 18 U.S.C. § 3553(a). He also challenges the authority of the district court to order the

federal sentence to be served consecutively to an as-yet-unknown state sentence. For the reasons that

follow, we affirm the judgment.

I.

This prosecution stemmed from defendant's use of counterfeit Michigan driver's licenses and credit cards to make fraudulent purchases at several Best Buy stores in northern Ohio. Defendant was arrested while attempting to make an illegal purchase at a Best Buy store in Mayfield Heights. Two accomplices were apprehended in the parking lot while defendant was inside. Defendant initially gave a false name when approached but later cooperated. When the police searched his car, they found three syringes, a plastic bag with white powder residue, a new iPhone, and two iPads.

Defendant subsequently entered into a written plea agreement, which provided that defendant was advised that his plea "requires the Court to impose a mandatory 2 year sentence of imprisonment." However, the agreement also stated that, if the defendant cooperated with authorities, the government "may move the Court for a substantial assistance reduction pursuant to U.S.S.G. Section 5K1.1," which could result in a sentence of less than twenty-four months. The government filed the contemplated § 5K1.1 motion prior to sentencing and requested a three-level reduction.

The district court conducted a sentencing hearing on April 16, 2012. In support of its substantial assistance motion, the government noted that defendant "immediately admitted to what was going on, [and] identified the role of the other two individuals who were involved." He continued to cooperate as the case proceeded against his co-defendants and was prepared to testify against them had they elected to go to trial. The Assistant United States Attorney explained that defendant acted as the straw purchaser. A co-defendant actually held the counterfeit driver's licenses and would give one to defendant prior to a purchase. Defendant was paid after he turned over the merchandise to his co-defendants.

Not surprisingly, defense counsel agreed with the government with respect to the three-level reduction. After some discussion among the court, counsel, and the probation officer, it was agreed that the advisory guidelines range was between nine and fifteen months of imprisonment. The district court somewhat reluctantly accepted this calculation, observing that "the way this case was prosecuted and the way the plea was negotiated . . . is somewhat flawed."

Defendant, who is now middle-aged, has a history of drug abuse that began at seventeen. In recent years, he has been addicted to heroin. Defense counsel urged the court to take his client's heroin addiction into account as a mitigating factor. After his arrest defendant completed a drug treatment program, although he relapsed not long thereafter. Despite that relapse, counsel asked that defendant serve some of his time in a halfway house where he could continue to get treatment.

The district court was not convinced and, while it accepted that the guidelines range was between nine and fifteen months, concluded that defendant "is certainly not deserving of a sentence within that range." Instead it imposed a sentence of twenty-three months, giving defendant one month less than the statutory minimum for his cooperation. In reaching this sentence, the court considered several of the factors listed in 18 U.S.C. § 3553(a). With respect to the nature and circumstances of the offense, it observed that "defendant is a 53-year-old male with an extensive prior record that includes convictions for larceny, assault, receiving stolen property, and other theft-related charges." In its view, the "instant case is a continuing and recurring theme in the defendant's life." The court also noted that there was an outstanding warrant for defendant's arrest issued by a court in Pennsylvania due to a probation violation. This history of crime troubled the court. Of particular concern to it was the fact that defendant would receive a lighter sentence than his co-

defendants even though "it appears that [the] three defendants [are] equally culpable" and defendant had "the worst criminal record by far."

The court took into consideration that defendant was placed on bond after his arrest, completed a residential drug program, but, as already mentioned, then tested positive for opiates. Not only did he test positive, defendant attempted to alter the results of the drug screening. As a result, the court concluded that "he is certainly not a good risk for any type of community confinement."

With respect to the deterrence factor, the court observed that identity theft burdens the economy and adversely impacts those whose identity is stolen. In its view, "[A] strong message needs to be sent, and candidly, in all due respect, even the two year [statutory minimum], at least in my view, is a slap on the wrist for these kinds of offenses." Although the court agreed to sentence defendant below the statutory minimum, it expressed deep-seated reservations:

> He is entitled to certain consideration below the mandatory minimum of two years. However, for all the reasons I've just stated, including his lengthy record, the attempts to try to address his drug addiction while on bond, and primarily for the fact this defendant has . . . , at least in my view, the record is deplorable. . . . He is involved with some type of criminal offense virtually once every year . . . .

The court imposed a sentence of twenty-three months of incarceration, one year of supervised release, ordered $21,419.91 in restitution, and assessed defendant $100. Over defense counsel's objection, the court also ordered that defendant's sentence be served consecutively "to whatever time is imposed in the Court in Pennsylvania."

## II.

*A. The Reasonableness of the Sentence*

This court reviews the reasonableness of a sentence under an abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). This standard of review applies regardless of whether the sentence falls inside or outside of the advisory guidelines range. *Id.* Reviewing courts must first determine that the sentencing court committed no procedural error, such as improperly calculating the guidelines range, failing to consider the § 3553(a) factors, or failing to adequately explain the reason for its sentence. *Id.*; *United States v. Aleo*, 681 F.3d 290, 298 (6th Cir. 2012). If it passes procedural muster, we ask whether the sentence was substantively reasonable, that is, given the totality of the circumstances, was it fundamentally fair. *Gall*, 552 U.S. at 51. While a presumption of reasonableness applies when the sentence is within the guidelines range, there is no presumption that the sentence was unreasonable if the sentence imposed falls outside of the range. *Id.* The extent of the variance is a factor in the substantive reasonableness inquiry. "If the judge 'decides that an outside-Guidelines sentence is warranted, [the judge] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Aleo*, 681 F.3d at 299 (quoting *Gall*, 552 U.S. at 50).

Defendant does not argue that the guidelines range as accepted by the district court was in error. He does fault the court, however, for not considering all of the § 3553(a) factors and for giving an inadequate explanation of its sentence. Defendant points out that the district court granted the government's substantial assistance motion, which lowered the guidelines range to between nine and fifteen months, a range that the court explicitly accepted only to impose an upward variance.

While defendant concedes that the district court referenced the § 3553(a) factors during sentencing, he notes that the court focused primarily on the negative factors: criminal history, lack

of compliance on parole, and drug addiction. In his view, the court did not adequately consider his arguments in favor of mitigation: remorse, acceptance of the need for treatment, and cooperation.

In this case, the upward variance was substantial, at least in percentage terms. The district court added eight months to the upper-end of the guidelines range, an increase of approximately 50%. Such variances require district courts to provide "compelling" reasons for their departure. *Aleo*, 681 F.3d at 300 ("[T]he greater the variance . . . the more compelling the justification based on the factors in § 3553(a) [must be].") (quotation omitted).

The government counters that the court correctly explained why, despite his substantial assistance, defendant did not merit a sentence within the adjusted guidelines range. While it is true that the court focused upon certain factors of § 3553(a) more than others—specifically, the need for deterrence and defendant's criminal history—it provided more than a "bare bones" rationale for its sentence. *See United States v. Wallace*, 597 F.3d 794, 805-06 (6th Cir. 2010) (collecting cases where this court has affirmed a sentence despite a bare bones explanation); *United States v. McBride*, 434 F.3d 470, 474 (6th Cir. 2006) ("This Court has held that although a sentence should reflect the considerations listed in § 3553(a), there is no requirement that the district court engage in a ritualistic incantation of the § 3553(a) factors it considers.") (quotation omitted).

Here, the court expressed strong feelings about two aspects of this case: the need to protect the public from identity theft, which it viewed as a significant societal problem, and the defendant's "deplorable" criminal history. Both of these considerations are legitimate § 3553(a) factors. In addition, the court's concern that defendant was receiving a lighter sentence than his co-defendants

despite a much worse criminal history is perfectly legitimate, although not required. *United States v. Simmons*, 501 F.3d 620, 624 (6th Cir. 2007).

It is true that the court did not dwell on the mitigating factors urged by defendant. Although it recognized his need for drug treatment, the court determined that his relapse while on bond cut against confinement in a halfway house. It also acknowledged defendant's cooperation but concluded that, while it was useful, it was not compelling.

In short, the district court adequately addressed the section 3553(a) sentencing factors and provided a rationale for why it imposed a sentence below the statutory minimum but above the adjusted guidelines range. The sentence was both procedurally and substantively reasonable.

## B. Consecutive Sentencing

Defendant next contends that the district court lacked the authority to order that his sentence be served consecutively to an as-yet-unspecified Pennsylvania sentence. In 2010, defendant was convicted of simple assault for punching his girlfriend. He received two years of probation, which he violated almost immediately by failing to report. As a result, an outstanding arrest warrant was issued, which was pending at the time of his arrest on the federal charges. Even though the anticipated state sentence was unknown at the time of his federal sentencing, the district court elected to run it consecutively to his federal sentence over the objection of defense counsel.

In *Setser v. United States*, 132 S.Ct. 1463 (2012), the Supreme Court rejected the argument advanced by defendant by answering the following question in the affirmative: "We consider whether a district court, in sentencing a defendant for a federal offense, has authority to order that the federal sentence be consecutive to an anticipated state sentence that has not yet been imposed."

*Id.* at 1466. The Court observed that judges have long had discretion to select between concurrent and consecutive sentences. *Id.* at 1468. While the district court cannot ensure that the Pennsylvania court runs the subsequent state sentence consecutively, that does not mean that it lacks the authority to order consecutive sentences. As the Supreme Court recognized, "That a sentence is thwarted does not mean that it was unreasonable. If a district court ordered, as a term of supervised release, that a defendant maintain a steady job, but a subsequent disability rendered gainful employment infeasible, we doubt that one would call the original sentence an abuse of discretion." *Id.* at 1473.

In our view, this reasoning applies with equal force to the circumstances before us.

## III.

The judgment is **affirmed**.