NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 17a0276n.06

Case No. 16-5987

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
May 17, 2017
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| PRESTON E. BYRD, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

**O P I N I O N**

BEFORE: BOGGS, MOORE, and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.** One felon—defendant Preston Byrd—spoke with another felon—Dan Coates—about a "business opportunity." The venture resulted in two lending companies being defrauded. Byrd faced several wire-fraud charges; Coates became a Government witness. At trial, Byrd's defense was to say that Coates cheated the companies while setting up Byrd. The jury believed Coates, however, who testified that he acted at Byrd's direction in preparing fraudulent loan applications. Byrd now raises various challenges to his convictions and sentences.

To start, he says that the district court erred in excluding evidence that he agreed to pay back one of the loan companies after it confronted him about the fraud. The court excluded the evidence under Federal Rule of Evidence 403, finding its probative value substantially

outweighed by its potential to confuse the jury. We review the court's decision to exclude the agreement for abuse of discretion. *United States v. White*, 846 F.3d 170, 178 (6th Cir. 2017).

Other fraud defendants have made Byrd's same argument. *See, e.g.*, *id.*; *United States v. Carter*, 483 F. App'x. 70, 75 (6th Cir. 2012). As we have said before, repayment is not a defense to fraud. *See Carter*, 438 F. App'x. at 75. Further, a defendant's attempt to return fraudulently obtained money after a victim confronts him says little about whether he intended to defraud the victim in the first place. *See id.* Thus, excluding evidence about such agreements is not an abuse of discretion. *Id.* Our answer remains the same here: the court did not abuse its discretion in deeming the agreement a distraction with little probative value.

Byrd next contends that the prosecution improperly vouched for Coates's credibility by citing Coates's proffer agreement—he agreed that if he testified falsely his testimony could be used against him—to argue that he lacked a motivation to lie. Byrd never objected, so we review only for plain error. *United States v. Henry*, 545 F.3d 367, 376 (6th Cir. 2008). That is, an error that was obvious, affected Byrd's substantial rights, and seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Olano*, 507 U.S. 725, 732 (1993). We will reverse "only in exceptional circumstances and only where the error is so plain that the trial judge and prosecutor were derelict in countenancing it." *United States v. Martin*, 516 F. App'x 433, 440 (6th Cir. 2013) (quoting *United States v. Collins*, 78 F.3d 1021, 1039 (6th Cir. 1996)).

This is not an exceptional circumstance. That the prosecutor's comments constituted vouching is not "obvious." The defense's strategy centered on impugning Coates's credibility, including by citing his agreement with the prosecution as a motivation to lie. *See* R. 172, Trial Tr., 1150–51. A prosecutor may refer to a witness's proffer agreement to deflect attacks on

witness's credibility based on that agreement.  *See United States v. Tocco*, 200 F.3d 401, 416–17 (6th Cir. 2000); *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999).  The prosecutor accurately summarized the provisions in Coates's agreement in anticipation of Byrd continuing to attack Coates with it.  And Byrd did, even misleadingly insinuating that Coates had received immunity from future prosecution.  R. 173, Trial Tr., PID 1385.  We see no plain error—let alone one that affected the fairness of Byrd's trial.

Byrd's last trial-related claim is that the prosecution shifted the burden of proof onto him by telling the jury that it should find that Byrd prepared fraudulent loan documents because Byrd never called a handwriting expert to refute that accusation.  That never happened, however.  During closing arguments, Byrd's attorney challenged the Government's case by noting that "[t]here was not a handwriting expert put in." R. 173, Trial Tr., PID 1388.  The Government responded in its rebuttal as follows:

> They're telling you that Mr. Coates is lying [about Byrd helping to prepare the loan applications], and one way you can tell is that he took a sip of water. I'm glad nobody accused me 'cause I've been sitting here, drinking water the whole time. I'm glad nobody accused me of that. Because he's nervous he took a sip of water? It's all they've got is blame Mr. Coates; and, again, if you've looked at the proof, there's no question the transactions occurred. We know they occurred. We know there were false documents presented. Didn't call a handwriting expert. *We didn't need to call a handwriting expert. You can compare the handwriting.*

R. 173, Trial Tr., PID 1392 (emphasis added).  The context demonstrates that the prosecutor argued that the signatures were so clearly Byrd's that jury could discern this on its own.  He did not argue that Byrd had some burden to present an expert.  Thus, Byrd's last gambit at challenging his trial fails.

Byrd's three sentencing challenges likewise lack merit.  First, he asserts that his sentence is procedurally unreasonable because the district court erroneously applied a two-level leadership enhancement.  *See* U.S.S.G. § 3B1.1(c).  Byrd argues that Coates was more like his partner,

rather than someone he controlled. We review the district court's fact finding for clear error. *United States v. Moon*, 513 F.3d 527, 539–40 (6th Cir. 2008). We also review the ultimate conclusion that Byrd qualifies as a leader deferentially. *United States v. Washington*, 715 F.3d 975, 983 (6th Cir. 2013) (reasoning that the trial court has institutional advantages in making this nuanced, fact-intensive judgment).

Here, evidence supported the district court's conclusion. The Guidelines list various factors to consider in determining whether a defendant had a leadership role. *See* U.S.S.G. § 3B1.1, comment, n. 4. They include "the exercise of decision making authority," "the claimed right to a larger share of the fruits of the crime," and "the degree of control and authority exercised over others." *Id.* If one credits Coates's testimony, as the district court and jury did, Byrd ticks off many boxes. Coates's testimony indicated that Byrd exercised ultimate control over the scheme—Coates, for example, did not send any applications without Byrd's approval. Further, Byrd received the lion's share of the fraudulent loan money. As the trial court's decision was not clearly erroneous, we defer to its judgment.

Byrd next contends that the court erred by failing to consider U.S.S.G. § 5G1.3(d) when denying his request to credit him for the time that he spent detained by the state of Tennessee while awaiting trial on unrelated charges. That section only addresses, however, a court's authority to order concurrent or consecutive sentences in cases "involving an undischarged term of imprisonment." *Id.* Here, as Byrd was detained pending trial, he was yet to have any "undischarged term of imprisonment." And Byrd asserts an error only related to his request for credit—not the structure of his federal sentences vis-à-vis any potential state sentences. The district court did not err by declining to consider factors designed for a different inquiry. Further, it did not err in deciding to let the Bureau of Prisons address Byrd's request for credit

later, especially considering that a Tennessee court might sentence him to consecutive sentences and then credit him for the time that he spent detained.

Finally, Byrd argues that the court erred by not considering the disparity in punishment between him and Coates. *See* 18 U.S.C. § 3553(a)(6). To his credit, Byrd concedes that this provision focuses on national disparities—not those between criminals in the same case. *See* *United States v. Simmons*, 501 F.3d 620, 623-24 (6th Cir. 2007). What Byrd should also have conceded is that we do not require the district court to consider disparities between different participants in an offense. *See United States v. Conatser*, 514 F.3d 508, 521 (6th Cir. 2008). Here, the district court considered only the lack of a national disparity. That's all it had to do.

We affirm.