NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0105n.06

Case No. 18-3430

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Mar 06, 2019

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| JASAUN MATTICE, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: SUTTON, WHITE, and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** Jasaun Mattice pleaded guilty to a 44-count indictment that included bank fraud, possession of counterfeit securities, and aggravated identity theft, stemming from two check-forgery schemes. The district court sentenced him to 79-months' imprisonment. Mattice appeals, arguing that his sentence is procedurally and substantively unreasonable. We **AFFIRM**.

## I.

Mattice was the mastermind behind two check-forgery schemes, one in 2014 and the other in 2016, that involved creating fraudulent checks. Mattice would create the checks using the names and bank information belonging to small businesses, individuals and a Catholic charity, and deposit them into his bank account. On October 13, 2016, Mattice was indicted and arrested on 28 counts related to the 2014 scheme. Undeterred by his indictment and detention, Mattice

continued his check-forgery scheme from jail, this time directing his co-conspirators to forge and cash checks using bank information belonging to a telemarketing company. Consequently, the grand jury issued a superseding indictment with 16 additional charges. Mattice passed counterfeit checks valued at $30,935.81 in 2014 and $9,9031.81 in 2016, for an aggregate loss of $40,839.

In March 2017, Mattice notified the district court that he wished to terminate his appointed counsel and represent himself. After alerting Mattice of the "disadvantage[s]" of proceeding pro se, and after advising Mattice that the court would not "give [Mattice] any leeway," the court ultimately granted his request. However, on January 22, 2018, two days before trial, Mattice had a change of heart and informed the court that he would "let the lawyer do it all." That same day— after the court recessed to allow Mattice to consult with his counsel—Mattice pleaded guilty to the 44-count superseding indictment, which included bank fraud, in violation of 18 U.S.C. §§ 1344 and 2; possessing a counterfeit security, in violation of 18 U.S.C. §§ 513(a) and 2; aggravated identity theft, in violation of 18 U.S.C. §§ 1028A(a)(1) and 2; and bank fraud and conspiracy to commit bank fraud, in violation of 18 U.S.C. §§ 1349 and 1344. As part of Mattice's plea agreement, the government agreed to recommend a two-level reduction for Mattice accepting responsibility.

Mattice's Presentence Investigation Report ("PSR") indicated a base offense level of 7. From there, he received a 6-level increase because the total loss was more than $40,000, *see* U.S.S.G. § 2B1.1(b)(1)(D); a 2-level increase because the offenses involved 10 or more victims, *see* § 2B1.1(2)(A); a 2-level increase for producing an unauthorized access or counterfeit access device, *see* § 2B1.1(b)(11)(B)(i); a 4-level increase for his role as a leader of the check-forgery scheme involving five or more participants, *see* § 3B1.1(a); a 2-level reduction for acceptance of responsibility, *see* § 3E1.1(a); and an additional 1-level reduction for timely notifying the

government of his intention to enter a guilty plea, *see* § 3E1.1(b). Mattice's PSR calculated a total offense level of 18. Mattice also had a lengthy criminal history, resulting in a criminal history category of V. At sentencing, the district court began by addressing Mattice's objections to the PSR, which included objections to: (1) the 4-level enhancement for his role as a leader of the scheme; (2) his criminal history category; and (3) the guidelines, arguing that they "should be reduced." The district court denied Mattice's objections.

To Mattice's benefit, however, the district court did not adopt the 2-level increase for the number of victims because the government advised the court that there were not 10 or more victims involved in Mattice's offenses. However, the district court also declined to adopt the additional 1-level reduction under § 3E1.1(b), concluding that Mattice was not entitled to more than a 2-level reduction because the additional 1-level reduction may only apply upon the government's motion, one it declined to make. *See* § 3E1.1(b). As such, the district court recalculated Mattice's total offense level to be 17, resulting in a sentencing guideline range of 46 to 57 months for counts 1 through 24 and 29 through 44. Additionally, the minimum sentence for counts 25 through 28, aggravated identity theft, was 24 months to be served consecutively. *See* 18 U.S.C. § 1028A. After recognizing that Mattice had "no crimes of violence in [his] background[,]" the court went on to note that Mattice was convicted of numerous similar offenses, including theft, telecommunications fraud, forgery and identity fraud.

The district court advised Mattice that it would consider the § 3553 factors and compare them with Mattice's background, character, and history, to "fashion . . . a sentence . . . sufficient but not greater than necessary to meet the ends of justice." After determining that Mattice "need[ed] something to stop [him] from committing these crimes[,]" the court sentenced him to

24 months for counts 25 through 28, and 55 months for the remaining counts, for a within-guideline sentence of 79 months' imprisonment.

**II.**

Mattice now appeals his sentence, arguing that the district court's sentence was substantively and procedurally unreasonable. We review the reasonableness of a district court's sentence for abuse of discretion. *Gall v. United States,* 552 U.S. 38, 51 (2007). However, when a party fails to raise a specific objection in the district court "we review its substantive import for plain error." *Unites States v. Stall*, 581 F.3d 276, 283 (2009) (citing *United States v. Vonner*, 516 F.3d 382, 391-92 (6th Cir. 2008) (en banc)).

A sentence within a correctly calculated guidelines range is entitled to a rebuttable presumption of reasonableness. *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007) (citing *Gall*, 552 U.S. at 50-52). A sentence is procedurally unreasonable "where the district court fails to properly calculate the Guidelines range, treats the Guidelines as mandatory, fails to consider the § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails to adequately explain the chosen sentence." *United States v. Jeter*, 721 F.3d 746, 756 (6th Cir. 2013) (alterations and internal quotation marks omitted) (quoting *Gall*, 552 U.S. at 51). "Conversely, a sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Robinson*, 778 F.3d 515, 519 (6th Cir. 2015) (alteration, internal quotation marks and citation omitted).

Mattice argues that the district court failed to properly consider: (1) that his acceptance of responsibility warranted a 3-level reduction to his offense level, instead of a 2-level reduction; (2) that the amount of loss related to his offenses only marginally exceeded the $40,000 threshold

required for a 6-level enhancement under § 2B1.1(b)(1)(D); and (3) the need to avoid unwarranted disparities between his sentence and that imposed on his co-conspirators. Lastly, Mattice argues that the district court erred by failing to grant his request for a downward departure based on his non-violent criminal history. These arguments lack merit.

We begin first with Mattice's argument that the district court erred in denying him an additional 1-level reduction to his offense level for acceptance of responsibility. Under § 3E1.1(b), a defendant may be granted an additional 1-level reduction for acceptance of responsibility "upon motion of the government" indicating that the defendant has "timely notif[ied] authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently." At sentencing, the government advised the court that it would not move for the additional reduction to Mattice's offense level, stating that it "had engaged in . . . at least two weeks of trial prep" and that "[t]here were quite a bit of resources invested by [the government] for [Mattice] to plead [guilty] two days before trial." Because the additional reduction was contingent upon the government's motion—one it declined to make for legitimate reasons—the district court did not err in denying Mattice the additional reduction. *See United States v. Collins*, 683 F.3d 697, 707 (6th Cir. 2012) ("Because the . . . language of § 3E1.1(b) explicitly recognizes both a government interest in avoiding trial preparation and in the efficient allocation of government resources, this Court agrees that both are legitimate government interests that justify the withholding of a § 3E1.1(b) motion.").[1] Mattice fails to provide any precedent supporting a contrary position.

---

[1] Mattice contends that "[t]he government and the Court [failed to] give [him] the proper deference that he did not know all of the consequences of going to trial versus pleading guilty, as he was pro se." As stated, the district court fully apprised Mattice of the disadvantages of proceeding as a pro se defendant and that he would not receive any leeway from the court. Mattice points to no

Next, Mattice argues that the district court erred by failing to consider that the total loss related to his offenses only marginally exceeded $40,000. Because Mattice failed to raise this below, we review it for plain error. *Stall*, 581 F.3d at 283. Section 2B1.1(b)(1)(D) provides for a 6-level enhancement if the loss related to the defendant's offense exceeds $40,000. Mattice does not dispute that the total loss in his case exceeds $40,000. Rather, he contends that, because the loss was only $839 over the $40,000 threshold, the district court erred in applying the 6-level enhancement. This argument finds no support in law or fact. Because the total loss exceeded $40,000, the district court did not err, let alone plainly err, in applying the 6-level enhancement.

Mattice further argues that the district court erred by failing to consider the disparity between his sentence and those of his equally culpable co-conspirators. But disparity between co-defendants is of no moment under § 3553(a)(6). *See, e.g.*, *United States v. Simmons*, 501 F.3d 620, 623 (6th Cir. 2007) (noting that this subsection is "not concerned with disparities between one individual's sentence and another individual's sentence, despite the fact that the two are co-defendants"). Instead, § 3553(a)(6) "is concerned with *national* disparities among the many defendants with similar criminal backgrounds convicted of similar criminal conduct," *id.* (emphasis added), an argument Mattice does not make.

This leaves Mattice's argument that the district court erred by failing to grant his request for a downward departure based on his criminal history under § 4A1.3. As Mattice's argument goes, because he has "no history of violence," and most of his fraud crimes were related to "minor drug use," the district court should have granted a departure. Appellant's Br. at 26. Here, because Mattice takes issue with the district court's denial of a downward departure and fails to argue,

---

authority that entitles him to such deference because of his self-imposed impairment. Thus, we reject this argument.

much less demonstrate, that the district court "was not aware of or did not understand its discretion to make such a departure," we do not review the district court's denial. *Mapp*, 311 F. App'x at 740.

### III.

Because Mattice fails to demonstrate that his sentence is procedurally or substantively unreasonable, we **AFFIRM** his sentence.